UNITED STATES BANKRUPTCY COURT

DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>GLOBAL ENVIRONMENTAL<br>SERVICES GROUP, LLC,<br><br>　　　Debtor. | Case No. 04-00748<br>Chapter 11 |
| JPL & COMPANY, INC.,<br><br>　　　Plaintiff,<br><br>　vs.<br><br>GLOBAL ENVIRONMENTAL<br>SERVICES GROUP, LLC, et al.,<br><br>　　　Defendant. | Adv. Pro. No. 05-90148<br><br><br><br><br>Re: Docket No. 44, 51 |

MEMORANDUM OF DECISION REGARDING
MOTION FOR RECONSIDERATION AND
MOTION FOR SUMMARY JUDGMENT

　　　　　The issues presented in this adversary proceeding would make a challenging final examination for a secured transactions course in law school. A Nevada corporation sold to a Hawaii limited liability company certain vehicles titled in California and Lousiana. The buyer agreed to make payments over time and the seller retained the certificates of title to the vehicles until the buyer paid in full. The buyer failed to pay and instead filed a bankruptcy petition. What are the

seller's rights?

## FACTS

The material facts are not disputed. JPL & Company, Inc., a Nevada corporation ("JPL"), agreed to sell certain assets to Global Environmental Services Group, LLC, a Hawaii limited liability company ("Global"). All of the assets were located in California. Among the assets were vehicles registered in California and Louisiana.

The purchase and sale agreement provided that Global would pay the purchase price over time. The parties signed a security agreement, which granted a security interest to JPL in the purchased assets. JPL delivered possession of the vehicles to Global. JPL retained the certificates of title covering the vehicles and filed a financing statement in Hawaii, which identified "Global Environmental Group, LLC" as the debtor. JPL took no other steps to perfect a security interest in the vehicles and other assets.

Global failed to pay JPL and, on January 24, 2004, filed a chapter 11 bankruptcy petition in this court. The court eventually appointed a trustee. The trustee sold two of the vehicles with the consent of JPL and continues to hold the proceeds. A third vehicle remains unsold.

## PROCEDURAL BACKGROUND

U.S. Bankruptcy Court - Hawaii   #05-90148   Dkt # 71   Filed  03/16/06   Page 2 of 16

JPL's first amended complaint, filed on November 23, 2005, consists of two counts. The first count seeks a determination that JPL has "a valid, enforceable, and perfected first lien interest" in the proceeds of the vehicles, "superior to the interests and claims of all other defendants." The second count alleges that (1) the purchase and sale agreement was an executory contract within the meaning of section 365 of the Bankruptcy Code, (2) the trustee and Global have assumed that agreement,[1] and (3) JPL is entitled to payment of the unpaid amount owed under the purchase and sale agreement.

Defendant Kelly Ottmar moved to dismiss the complaint on December 8, 2005. (Mr. Ottmar is Global's principal. As a guarantor, he paid a substantial portion of Global's debt to First Hawaiian Bank. He contends that he is subrogated to the secured claims of First Hawaiian Bank. The pending motions do not deal with Mr. Ottmar's claims.) At a hearing held on January 20, 2006, I granted the motion as to count 2, holding that the purchase and sale agreement was not an "executory contract" within the meaning of section 365, and denied the motion as to count 1, holding that unresolved issues made dismissal inappropriate at that early stage of the case.

---

[1] No one has challenged this allegation. A trustee cannot assume an executory contract without court approval. The court has never authorized the trustee to assume any of the JPL agreements.

U.S. Bankruptcy Court - Hawaii   #05-90148   Dkt # 71   Filed 03/16/06   Page 3 of 16

This decision deals with two motions: (1) JPL's motion for reconsideration of the dismissal of count 2; and (2) Mr. Ottmar's motion for summary judgment on count 1.

DISCUSSION

*The Purchase and Sale Agreement Was Not An "Executory Contract."*

Bankruptcy Code § 365 provides that a trustee may, if the court approves, "assume or reject any executory contract or unexpired lease of the debtor." The Code does not define the term "executory contract." The Ninth Circuit and most other courts have adopted the "Countryman" definition. According to Professor Countryman, an executory contract is "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." Vern Countryman, <u>Executory Contracts in Bankruptcy: Part I</u>, 57 Minn. L. Rev. 439, 460 (1973).

JPL argues that the purchase and sale agreement was an "executory contract" when Global filed its bankruptcy petition because Global and JPL owed material unperformed obligations to each other on that date. Global owed JPL a substantial amount of money, and JPL was obligated to deliver title to Global upon payment and to refrain from competing with Global and soliciting Global's

4

U.S. Bankruptcy Court - Hawaii    #05-90148    Dkt # 71    Filed 03/16/06    Page 4 of 16

customers. This argument is fatally flawed for several reasons.

First, the argument focuses on the form of the transaction and ignores its economic substance. In essence, JPL sold assets to Global in exchange for promised future payments and retained an interest in the assets to secure Global's promise. In substance, the interest which JPL retained is indistinguishable from a purchase money security interest. Indeed, the parties initially agreed that the transaction would take that very form. JPL argues that the form which the transaction eventually took dictates a dramatically different result than its substance implies. This is inconsistent with the universal rule that legal results should be based on substance not form, and the specific rule applicable to secured transactions that a transaction intended to create a security interest in property is treated as such regardless of its form. Haw. Rev. Stat. §490:9-109(a)(1) ("this article applies to . . . a transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract"); Cal. Com.Code § 9109(a)(1); La. Rev. Stat. Ann. §10:9-109(a)(1).

Second, the argument relies on a literal reading of a single sentence in Professor Countryman's seminal article and ignores the other 100 pages or more of the article (which appeared in two separate parts). It discusses at length how the definition should apply to various kinds of contracts, including about eighteen full

5

pages about contracts for the sale of goods (id. at 474-91). In that discussion, Professor Countryman makes it clear that, under his definition, a "conditional sale contract" covering personal property is not an "executory contract" once the seller gives physical possession of the goods to the buyer, whether or not the seller attempts to retain title to the goods. See, e.g., id. at 482-83 and 489 (referring to "the premise, erroneous I believe, that the conditional sale contracts . . . were executory contracts . . . .") Instead, the seller is treated as a secured creditor, and the seller's rights depend upon whether the seller perfected the security interest.

Third, JPL's argument is inconsistent with Ninth Circuit case law. Only one reported Ninth Circuit decision deals with a contract for the sale of personal property with deferred payments that had not been terminated prior to the bankruptcy. That case is In re Pacific Express, Inc., 780 F.2d 1482 (9th Cir. 1986). A creditor and the debtor signed a document called a "Lease Agreement." Id. at 1483. The bankruptcy court ruled, and the district court and Ninth Circuit agreed, that the lease was not a true lease but was instead a disguised security agreement. Id. at 1486. The Ninth Circuit held that the agreement was not an "executory contract" because "a mere installment sale no longer involves an executory contract when the seller has already delivered the thing sold." Id. at 1487. If a installment sale and security agreement disguised as a lease is not an executory

6

U.S. Bankruptcy Court - Hawaii   #05-90148   Dkt # 71   Filed  03/16/06   Page 6 of 16

contract, than an undisguised agreement of the same kind must also not be an executory contract. See also In re Rojas, 10 B.R. 353 (B.A.P. 9th Cir. 1981).

In re Alexander, 670 F.2d 885 (9th Cir. 1982), and In re Cochise College Park, Inc., 703 F.2d 1339 (9th Cir. 1983), are inapplicable. Alexander did not involve an installment sales contract, but rather a contract which provided for full payment of the purchase price at closing and which had not closed at the date of bankruptcy. Further, both cases involved contracts for the sale of real property, not personal property. Under the Uniform Commercial Code, the location of title has no bearing on the rights of the parties to a secured transaction. Title is still critically important, however, with regard to real estate (at least in some respects). So long as this is true, a contract for the sale of real property might be executory even though an identical contract for the sale of personal property might not. As Professor Countryman explained, this is not the result of an inconsistency in the definition of "executory contract" for purposes of bankruptcy law, but rather differences in the treatment of real and personal property under nonbankruptcy law. Countryman, supra, 57 Minn. L. Rev. at 473 and 474.[2]

In re Wegner, 839 F.2d 533 (9th Cir. 1988), also does not support

---

[2]In a state like Hawaii, where an "agreement of sale" covering real estate is treated for practical purposes much like a purchase money mortgage, Jenkins v. Wise, 58 Haw. 592, 574 P.2d 1337 (1978), there may also be no difference in treatment under bankruptcy law.

7

JPL's position. The debtor entered into an installment sale contract for certain cattle and machinery. The agreement provided that, until full payment, the seller would retain title to the property and his brand would remain on the cattle, except that the seller would provide a bill of sale on demand whenever the debtor decided to sell some of the cattle. About two years later, the debtor made a partial payment to the seller but told the seller that he was broke and could not make any more payments. The parties terminated the contract and the debtor returned the cattle and equipment to the seller. A short time later, the debtor filed a chapter 7 petition. The trustee sued the seller to recover, as preferential transfers, the partial payment and the cattle and machinery. The Ninth Circuit held that the contract was an executory contract. The court relied upon a Montana "branding statute" which provides that livestock cannot be transferred unless the seller provides a bill of sale for presentation to a livestock inspector who must check the livestock for brands. The court held that the branding statute took precedence over the UCC's provisions. The court concluded that the duty to provide a bill of sale on demand upon a resale of particular cattle was a material obligation which made the contract executory.

Wegner does not help JPL for several reasons. First, the Wegner court held only that the duty to provide a bill of sale on demand made the contract

8

executory. "Since we find that the duty to provide a bill of sale on demand is a material obligation, we do not need to address the issue of whether [the seller's] duty of providing legal title after payment in full would make the contract executory." Id. at 537. JPL claims that its duty to provide legal title upon full payment makes its contract with Global executory. The Wegner court expressly declined to give an opinion on that question. Second, Wegner relied on the Montana branding statute, which the court held takes precedence over any contrary provisions of the UCC. There is no indication that the legislatures of Hawaii, California, or Louisiana intended that their motor vehicle registration statutes would supplant article 9. In fact, every indication is to the contrary. The UCC looks to the motor vehicle statutes insofar as perfection of security interests is concerned, but otherwise article 9 occupies the field.[3]

JPL argues that, by enacting section 365(i), Congress confirmed that conditional sales contracts are executory contracts. That section provides that, if the trustee rejects a timeshare agreement or an executory contract for the sale of real property, the nonbankrupt purchaser may nonetheless retain possession of the

---

[3]Wegner is also puzzling for other reasons. The case was an action to avoid preferential transfers. The court never explained why the avoidability of the transfers depended upon whether the contract was executory. Further, the court held that the parties had effectively terminated the contract before the bankruptcy filing. A contract that was terminated prepetition cannot be an executory contract for purposes of section 365. In re Windmill Farms, Inc., 841 F.2d 1467, 1469 (9th Cir. 1988).

9

property under certain circumstances. JPL argues that, if Congress thought that land sale contracts were not executory, Congress would have said so rather than attempting to ameliorate the effects of rejection. This argument is unavailing. Section 365(i) applies only to real property agreements. As Professor Countryman explains at length, nonbankruptcy law treats contracts for the sale of real property very differently than contracts for the sale of personalty. Although federal law defines the term "executory contract," In re Alexander, 670 F.2d at 888, nonbankruptcy law defines the rights and duties of the parties to a particular contract and thus determines whether that contract fits within the definition, In re Cochise College Park, 703 F.2d at 1348 n.4. In many states, the rights of parties to real property depend critically upon who has title. With regard to secured transactions in personal property, however, the UCC has rendered questions of title meaningless. Congress' effort to protect purchasers of real property from the effects of rejection therefore does not imply that Congress thought that contracts for the sale of personal property are executory contracts; Congress' actions are perfectly consistent with the position that installment sale contracts for personal property are not executory contracts.

JPL argues that, even if an installment sales contract is not an executory contract, the inclusion of non-compete and non-solicitation provisions
10

make this particular contract executory (or at least create genuine issues of material fact about whether the contract is executory). Fundamentally, the agreement was an installment sale of personal property. Such an agreement is not an executory contract. The inclusion of ancillary provisions having to do with the purchased assets, such as warranties, do not make the contract executory. The interpretation of the term "executory contract" is a question of law which does not create triable issues of fact. In re Wegner, 839 F.2d at 536.

I therefore decline to reconsider my prior ruling that the agreement was not an executory contract and that count 2 should therefore be dismissed.[4]

*JPL Does Not Have a Perfected Security Interest*

Mr. Ottmar moves for summary judgment on count 1 of the complaint. He argues that JPL failed to take the requisite steps to perfect its security interest in the vehicles.

JPL contends that its interest is valid and enforceable against the trustee because it filed a financing statement in Hawai'i and retained the certificates of title for the vehicles.

JPL's financing statement is defective. "[A] financing statement is

---

[4] There are other interesting questions which the parties have not briefed and which I therefore will not decide. For example, if the JPL agreements are executory contracts, must the trustee assume them, or could he decide to reject instead? What rights and claims could JPL assert if the trustee rejected them?

11

sufficient only if it . . . [p]rovides the name of the debtor . . . ." Haw. Rev. Stat. § 490:9-502(a)(1). "A financing statement sufficiently provides the name of the debtor . . . [i]f the debtor is a registered organization, only if the financing statement provides the name of the debtor indicated on the public record of the debtor's jurisdiction of organization which shows the debtor to have been organized . . . ." Id. §490:9-503(a)(1). It is undisputed that JPL's financing statement did not correctly state Global's registered name.

JPL argues that this error should be overlooked as a "minor error . . . not seriously misleading" under section 9-506. This argument ignores the 2001 amendments to the UCC. Section 9-506(b) now provides that "a financing statement that fails sufficiently to provide the name of the debtor in accordance with section 9-503(a) is seriously misleading." (Section 9-506(c) states an exception to this rule, but JPL makes no effort to show that the exception applies.)

JPL's retention of the certificates of title is also insufficient to perfect a security interest. Because Global is a limited liability company registered in Hawaii, Hawaii law controls. Haw. Rev. Stat. §§ 490:9-307(e), 9-301(1). Hawaii law provides that, while goods are covered by a certificate of title, "[t]he local law of the jurisdiction under whose certificate of title the goods are covered governs perfection, the effect of perfection or nonperfection, and the priority of a security

12

sufficient only if it . . . [p]rovides the name of the debtor . . . ." Haw. Rev. Stat. § 490:9-502(a)(1). "A financing statement sufficiently provides the name of the debtor . . . [i]f the debtor is a registered organization, only if the financing statement provides the name of the debtor indicated on the public record of the debtor's jurisdiction of organization which shows the debtor to have been organized . . . ." Id. §490:9-503(a)(1). It is undisputed that JPL's financing statement did not correctly state Global's registered name.

JPL argues that this error should be overlooked as a "minor error . . . not seriously misleading" under section 9-506. This argument ignores the 2001 amendments to the UCC. Section 9-506(b) now provides that "a financing statement that fails sufficiently to provide the name of the debtor in accordance with section 9-503(a) is seriously misleading." (Section 9-506(c) states an exception to this rule, but JPL makes no effort to show that the exception applies.)

JPL's retention of the certificates of title is also insufficient to perfect a security interest. Because Global is a limited liability company registered in Hawaii, Hawaii law controls. Haw. Rev. Stat. §§ 490:9-307(e), 9-301(1). Hawaii law provides that, while goods are covered by a certificate of title, "[t]he local law of the jurisdiction under whose certificate of title the goods are covered governs perfection, the effect of perfection or nonperfection, and the priority of a security

12

interest in goods covered by a certificate of title . . . ." Haw. Rev. Stat. §§ 490:9-303(c). This requires examination of the motor vehicle registration statutes of California and Louisiana.

Cal. Veh. Code § 6300 provides that, with certain exceptions that do not apply here, "no security interest in any vehicle registered under this code . . . is perfected until the secured party . . . has deposited . . . with the department . . . a properly endorsed certificate of ownership to the vehicle subject to the security interest showing the secured party as legal owner . . . ." JPL did not comply with section 6300. Accordingly, its security interest is not perfected.[5]

JPL argues that it did not have to comply with section 6300 because it retained title to the vehicles. JPL relies on Cal. Veh. Code § 5600, which provides that a transfer of a motor vehicle is ineffective until the title certificate is endorsed and delivered to the transferee and then delivered to the department. JPL's argument ignores Cal. Veh. Code § 5601, which provides that "[s]ection 5600 does not apply . . . to transfers involving the creation of security interests subject to Chapter 3, commencing at Section 6300." There is no doubt that JPL and Global

---

[5]Even if JPL had filed a sufficient financing statement, that would not perfect its security interest in the California titled vehicles. Cal. U. Comm. Code § 9311(a)(2)(A) provides that "the filing of a financing statement is not necessary or effective to perfect a security interest in property subject to . . . [t]he provisions of the Vehicle Code which require registration of a vehicle or boat [emphasis added]." But see § 9311(d).

13

U.S. Bankruptcy Court - Hawaii   #05-90148   Dkt # 71   Filed 03/16/06   Page 13 of 16

intended that JPL would have a security interest in the vehicles.  The purchase and sale agreement so provides, and Global and JPL signed a separate security agreement which granted JPL a security interest.  Therefore, section 5600 is inapplicable.

JPL cites no statute or decision holding that one may perfect a security interest in a California registered vehicle by retaining the certificate of title.  JPL failed to comply with the applicable California statute.  It has no perfected security interest in the vehicles registered in California.

Louisiana law leads to the same result.  La. Rev. Stat. Ann. § 32:710.A provides that "[a] security interest covering a titled motor vehicle subject to this Chapter shall be perfected as of the time the financing statement is received by the Department of Public Safety and Corrections . . . ."  JPL did not comply with this provision and has not cited any authority for the proposition that a creditor can perfect a security interest in a Louisiana titled motor vehicle by retaining the certificate of title.

JPL also relies on the "vendor's privilege" codified at La. Civ. Code Ann. art. 3227, which provides that "[h]e who has sold to another any movable property, which is not paid for, has a preference on the price of his property, over the other creditors of the purchaser, whether the sale was made on a credit or

14

without, if the property still remains in the possession of the purchaser." Mr. Ottmar correctly points out that the vendor's privilege only applies to sales made in Louisiana. In re Leggett, 505 F.2d 120, 121 (5th Cir. 1974). In this case, neither the parties nor any of the property were located in Louisiana. Further, the vendor's privilege is waived if the vendor represents that the property being sold is free from liens, as JPL did. In re Tejas Drilling Co., 849 F.2d 176, 179 (5th Cir. 1988).

More fundamentally, JPL's position is inconsistent with the modern law of secured transactions. In essence, JPL contends that, by retaining title to the vehicles, it entirely avoids the effect of article 9 of the Uniform Commercial Code. It is clear, however, that article 9 applies to the transaction. Haw. Rev. Stat. §490:9-109(a)(1) ("this article applies to . . . [a] transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract"); Cal. Com. Code § 9109(a)(1); La. Rev. Stat. Ann. §10:9-109(a)(1). JPL intended to retain an interest in the vehicles to secure Global's obligation to pay for the vehicles. Parties can not opt out of the UCC by selecting a different form to accomplish their goal.

CONCLUSION

Appropriate separate orders will issue denying JPL's motion for reconsideration as to count 2 and granting Mr. Ottmar's motion for summary

15

judgment as to count 1.

/s/ Robert J. Faris
United States Bankruptcy Judge
Dated: 03/16/2006

U.S. Bankruptcy Court - Hawaii    #05-90148    Dkt # 71    Filed  03/16/06    Page 16 of 16